UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                 :

PELEUS INSURANCE COMPANY,          :

                                 :

                 Plaintiff,       :

                                 :               20 Civ. 2971 (JPC)

       -v-                      :

                                 :              <u>OPINION AND ORDER</u>

ATLANTIC STATE DEVELOPMENT CORP.,  :
LAURAN WALK, and MICHAEL WINTERS,  :

                                 :

                 Defendants.    :

                                 :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       This case involves a dispute over insurance coverage arising from a January 2019 accident

at a construction project in downtown Manhattan.  Michael Winters, who worked for a

subcontractor on that project, allegedly was injured after falling at the job site.  He then sued the

project's general contractor, Atlantic State Development Corp., in New York state court.  Atlantic

responded by seeking coverage for its defense and indemnification from its insurer, Peleus

Insurance Company.  Peleus then appointed counsel to represent Atlantic in the state case.  But

after Peleus discovered that Atlantic had not complied with certain requirements of their insurance

policy that pertain to Winters's employer, Peleus brought this suit seeking a declaration that it need

not defend or indemnify Atlantic in the state court action.  Peleus now has moved for summary

judgment.  Because Atlantic did not meet the insurance policy's requirements for coverage, the

Court grants Peleus's motion for summary judgment, finding that Peleus need not defend or

indemnify Atlantic.

## I. Background[1]

### A. Facts

Atlantic State Development Corp. is a construction company that was the general contractor for a construction project at 71 Murray Street in Manhattan. Deft. 56.1 Stmt. ¶¶ 12, 14; *see* Dkt. 37-1 ("State Complaint") ¶ 4. Atlantic hired Taconic Builders, Inc. as a subcontractor to perform work on that project. Deft. 56.1 ¶ 14. On January 23, 2019, Michael Winters, a Taconic employee, allegedly fell and suffered injuries while working at the construction site. *Id.* ¶¶ 12, 13. In April 2019, Winters sued Atlantic and the property owner, Lauran Walk, in New York state court, in a case captioned *Michael Winters v. Atlantic State Development Corp. and Lauran Walk*, Index No. 153548/2019, New York Supreme Court, New York County ("New York Case"). *Id.* ¶ 11; State Complaint ¶ 8. Winters alleges that Atlantic's and Walk's negligence caused his fall and injuries. State Complaint ¶¶ 12-13.

Peleus Insurance Company had issued an insurance policy to Atlantic that covered the period of October 19, 2018 to October 19, 2019, and thus was in effect at the time of Winters's January 23, 2019 accident. Deft. 56.1 Stmt. ¶ 9; Dkt. 32 ("Cornbleet Decl.") ¶ 4, Exh. A ("Insurance Policy"). Approximately five months after the New York Case was filed, Atlantic alerted Peleus of Winters's lawsuit and sought coverage from Peleus for any liability and for its defense costs. Atlantic sent information about the New York Case to Peleus on September 19, 2019, and four days later Peleus acknowledged receipt. Pl. 56.1 Stmt. ¶ 15 (citing Cornbleet Decl.

---

[1] These facts are mainly drawn from Peleus's statements of material facts under Local Civil Rule 56.1, Dkt. 34 ("Pl. 56.1 Stmt."), Atlantic's counter-statement pursuant to Rule 56.1, Dkt. 39 ("Deft. 56.1 Stmt."), and the declarations including attached exhibits filed by the parties. Unless otherwise noted, the Court cites only to Atlantic's counter-Rule 56.1 statement where the parties do not dispute the fact, Atlantic has not offered admissible evidence to refute the fact, or Atlantic simply seeks to add its own "spin" on the fact or otherwise dispute the inferences from the stated fact.

¶ 6 (stating that, on or about September 23, 2019, Peleus was notified of the New York Case));

Deft. Counter 56.1 Stmt. ¶ 15 (citing Dkt. 37 ("Garvey Decl.") ¶ 10, Exh. 7 (June 5, 2020 letter on

behalf of Peleus acknowledging receipt of loss information provided by Atlantic on September 19,

2019)).  The following day, on September 24, 2019, Peleus assigned a law firm to defend Atlantic

in the New York Case.  Deft. 56.1 Stmt. ¶ 16.

Six days later, on September 30, 2019, Peleus sent Atlantic what is known as a reservation

of rights letter.  Cornbleet Decl., Exh. D ("Reservation of Rights Letter").  In that letter, Peleus

reserved its right to disclaim coverage to Atlantic if it discovered that the lawsuit did not fall within

the Insurance Policy.[2]  Deft. 56.1 Stmt. ¶ 18; Reservation of Rights Letter at 5-6.  The letter

specifically referenced a particular endorsement in the Insurance Policy titled "No Coverage

Applies if Contractor Conditions Not Met" ("Contractor Conditions Endorsement").  Deft. 56.1

Stmt. ¶ 18; Reservation of Rights Letter at 2-5.  The Contractor Conditions Endorsement "modifies

[the] insurance provided under" the policy's general liability coverage by providing that Peleus:

> will have no duty to defend or indemnify [Atlantic] if prior to the commencement
> of any work [Atlantic] fails to satisfy all conditions precedent to coverage set forth
> below.   [Atlantic] agrees that [Peleus] need not demonstrate any prejudice to
> [Peleus] as a result of [Atlantic's] failure to comply with any of the below condition
> [sic] in order to enforce those conditions precedent to coverage.

Deft. 56.1 Stmt. ¶ 10; Cornbleet Decl. ¶ 5, Exh. A-3 at 27, Exh. B at 1 ("Contractor Conditions

Endorsement").[3]  As relevant here, the Contractor Conditions Endorsement required any contractor

---

[2] The Reservation of Rights Letter, however, did not inform Atlantic of any right to retain counsel of its choosing in the New York Case.  *See* Reservation of Rights Letter.

[3] The entire Insurance Policy is attached as Exhibit A to the Cornbleet Declaration, and is divided into four parts, docketed as Exhibits A-1, A-2, A-3, and A-4.  The relevant portion of the Insurance Policy, the Contractor Conditions Endorsement, is found at pages 27 to 28 of Exhibit A-3.  The Contractor Conditions Endorsement is also separately attached as Exhibit B to the Cornbleet Declaration.  For ease of reference, the Court refers to Exhibit B when discussing the Contractor Conditions Endorsement in this Opinion and Order.

hired by Atlantic "to perform work" to have "signed and executed an agreement" with Atlantic "to defend, indemnify, and hold [Atlantic] harmless" for "all losses arising out of the work performed by or on behalf of any 'contractor.'"  Deft. 56.1 Stmt. ¶ 10; Contractor Conditions Endorsement at 1-2.  The Contractor Conditions Endorsement further mandated that such a contract require the contractor to name Atlantic "as an additional insured under their commercial General Liability policy," and that the contractor "maintained 'adequate insurance.'"  Deft. 56.1 Stmt. ¶ 10; Contractor Conditions Endorsement at 1.

Despite these requirements, Atlantic did not enter into a written contract with its subcontractor, Taconic, to indemnify or defend Atlantic or to name Atlantic as an additional insured on Taconic's insurance policy.  Deft. 56.1 Stmt. ¶¶ 23-24.  On March 3, 2020, Atlantic's defense counsel in the New York Case informed Peleus that Atlantic lacked the requisite contract with Taconic.  *Id.* ¶ 28.  That same day, Peleus advised Atlantic in writing that the Insurance Policy did not cover the New York Case because Atlantic failed to comply with the Contractor Conditions Endorsement.  *Id.* ¶ 29; Cornbleet Decl. ¶ 16, Exh. H ("Denial of Coverage Letter").

**B. Procedural History**

On April 10, 2020, Peleus sued Atlantic, Walk, and Winters in this Court, alleging that Atlantic was not in compliance with the Insurance Policy by lacking the required agreement with Taconic.  Dkt. 1 ("Complaint") ¶ 45.  Peleus seeks a declaration that no coverage exists for Atlantic under the Insurance Policy and that Peleus may withdraw its defense of Atlantic in the New York Case.  *Id.* ¶¶ 48-49, p.10.

After the parties completed discovery, Peleus moved for summary judgment against all Defendants.  *See* Dkts. 30, 33 ("Motion").  Peleus asks the Court (1) for any relief it deems just and proper and (2) to declare that (a) Peleus has no duty to defend or indemnify Atlantic, (b) Peleus

4

has no duty to pay any judgment in the New York Case, (c) Peleus may withdraw from defending Atlantic in the New York Case, and (d) Peleus is entitled to recoup its costs incurred in defending Atlantic.[4]  Motion at 14-15.  Only Atlantic has opposed the Motion.  *See* Dkt. 38 ("Opposition").

After the parties finished briefing Peleus's Motion, the Court ordered supplemental briefing.  Dkts. 44, 45.  First, the Court ordered the parties to file affidavits addressing this Court's subject matter jurisdiction.  Dkt. 44 at 2.  The parties filed those affidavits, which established that the parties are diverse thereby confirming this Court's jurisdiction over the case.  Dkt. 46 ¶¶ 4-7; *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 64 (2d Cir. 2009) ("[W]hen the record as a whole, as supplemented, establishes the existence of the requisite diversity of citizenship between the parties, [the Court] may simply deem the pleadings amended so as to properly allege diversity jurisdiction." (quotations omitted)).  Second, the Court ordered the parties to file supplemental briefing on whether Peleus is entitled to recoup its defense costs in the New York Case.  Dkt. 45.  In response, Peleus withdrew its request for a declaration as to its entitlement to recoup those costs.  Dkt. 47.

## II.  Legal Standards

A court should grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine factual dispute exists, a court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).

---

[4] The Complaint asks the Court to award Peleus costs and disbursements for this case.  *See* Complaint at 10.  Peleus's Motion does not, however, seek this relief.  *See* Motion at 14-15.  The Court therefore will not consider granting this relief.

The moving party bears the initial burden to show the lack of a genuine dispute on each material element for the asserted claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party carries that burden, the non-moving party must then "designate specific facts showing that there is a genuine issue for trial." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (quotations omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A court must grant summary judgment "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.

Peleus contends that New York state law applies here and Atlantic's brief assumes that it does as well. *See* Motion at 3-4; Opposition at 2. Taken together, this is sufficient for New York law to control the dispute. *See Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 296 (2d Cir. 2000) ("The parties' briefs assume that New York law controls this dispute, and such implied consent is sufficient to establish choice of law.").

"Under New York law, the initial interpretation of a contract is a matter of law for the court to decide." *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996) (quotations omitted). When "the contract is ambiguous, the issue should be submitted to the trier of fact." *Id.* (quotations omitted). But if the contract is unambiguous, the court must "give effect to the contract as written." *Id.* (quotations omitted). "As with the interpretation of any contract, the unambiguous terms of an insurance policy must be accorded their plain and ordinary meaning." *Seaport Park Condo. v. Greater N.Y. Mut. Ins. Co.*, 828 N.Y.S.2d 381, 383 (App. Div. 2007) (citations omitted). Courts "read an insurance policy in light of common speech and the reasonable expectations of a businessperson." *Belt Painting Corp. v. TIG Ins. Co.*, 795 N.E.2d 15, 17 (N.Y. 2003) (quotations omitted).

### III.  Discussion

The central question in this case is whether Peleus has a duty to defend and indemnify Atlantic.  Under "New York law, an insurer's duty to defend is exceedingly broad and is separate from and more expansive than the duty to indemnify." *Com. Union Assurance Co., PLC v. Oak Park Marina, Inc.*, 198 F.3d 55, 59 (2d Cir. 1999) (quotations omitted); *accord Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 930 N.E.2d 259, 261 (N.Y. 2010).  An insurer must defend "whenever the allegations of the complaint suggest a reasonable possibility of coverage." *Regal Const. Corp.*, 930 N.E.2d at 261 (quotations and alterations omitted).  There is a reasonable possibility of coverage "[i]f a complaint contains any facts or allegations which bring the claim even potentially within the protection purchased." *Id.* (quotations and alterations omitted).  An insurer thus has a duty to defend even if "facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." *Int'l Bus. Machs. Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 427 (2d Cir. 2002) (quoting *Fitzpatrick v. Am. Honda Motor Co.*, 575 N.E.2d 90, 90 (N.Y. 1991)); *see Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 148 (2d Cir. 2004) ("[T]he general rule in determining whether an insurer has a duty to defend is to compare the allegations of the complaint with the operative insurance policy.").

This broad duty to defend does, however, have its limits.  *Com. Union Assurance Co., PLC*, 198 F.3d at 59.  "An insurer cannot be obliged to defend if there is no legal or factual allegation in the underlying complaint for which the insurer might eventually have to indemnify the insured." *Id.*  In determining whether the insurer will never have a duty to indemnify the insured, a court may look to "evidence extrinsic" that is "unrelated to the merits of plaintiff's action," if it will "plainly take the case outside the policy coverage." *Int'l Bus. Machs. Corp.*, 363 F.3d at 148 (quotations omitted).  But the "extrinsic evidence relied upon may not overlap with the facts at

issue in the underlying case." *Charter Oak Fire Ins. Co. v. N.Y. Marine & Gen. Ins. Co.*, No. 20 Civ. 2911 (JPC), 2021 WL 4084404, at *3 (S.D.N.Y. Sept. 8, 2021) (quotations omitted).

Here, Atlantic does not contest that it failed to satisfy the provisions of the Contractor Conditions Endorsement requiring a coverage agreement with Taconic.  Deft. Counter 56.1 Stmt. ¶¶ 23-24.  Nor could it plausibly do so given the undisputed material facts.[5]  The Contractor Conditions Endorsement required Atlantic to have "signed and executed an agreement" with Taconic "to defend, indemnify, and hold the insured harmless" and to name Atlantic "as an additional insured under their commercial General Liability policy."  Deft. 56.1 Stmt. ¶ 10; Contractor Conditions Endorsement at 1.  In response to Peleus's requests for admission pursuant to Federal Rule of Civil Procedure 36, Atlantic admitted the following:

> At the time of the accident alleged in the [New York Case], there was no executed written contract or agreement between Atlantic State Development and Taconic Builders, Inc. which includes an obligation on behalf of Taconic Builders, Inc. to indemnify Atlantic State Development.
>
> * * *
>
> At the time of the accident alleged in the [New York Case], there was no executed written contract or agreement between Atlantic State Development and Taconic Builders, Inc. which includes an obligation on behalf of Taconic Builders, Inc. to name Atlantic State Development as an additional insured on its insurance policy.

Dkt. 31-7 at 1-2.  In the absence of such a contract prior to the commencement of the work, Peleus has "no duty to defend or indemnify" Atlantic in the New York Case.  Deft. 56.1 Stmt. ¶ 10; Contactor Conditions Endorsement at 1.  So unless Atlantic's failure to comply with the

---

[5] Atlantic has not objected to the Court's consideration of evidence of its failure to meet this requirement.  *See* Deft. 56.1 Stmt. ¶¶ 23, 29.  And it is proper for the Court to do so, as that evidence does not overlap with Winters's claims in the New York Case.  In that case, Winters claims that Atlantic and Walk caused his injuries through "negligence and violations of Labor Law" by failing to have a safe workplace and failing to take proper precautions.  State Complaint ¶¶ 12-13.  Evidence of Atlantic's lack of a contract with Taconic to indemnify Atlantic or name it as an additional insured does not affect Winters's claims.

requirements of the Contractor Conditions Endorsement is excused, Peleus is entitled to summary judgment.

**A.  New York Insurance Law Section 3420(d)**

Atlantic's first argument to excuse its failure to meet those requirements focuses on New York Insurance Law section 3420(d).  This law covers "cases involving death and bodily injury claims arising out of a New York accident and brought under a New York liability policy." *KeySpan Gas E. Corp. v. Munich Reinsurance Am., Inc.*, 15 N.E.3d 1194, 1198 (N.Y. 2014).  For those types of cases, there is a temporal limitation for when an insurer can invoke a policy exclusion to deny coverage or disclaim liability.  Atlantic claims that Peleus gave untimely notice of its decision to deny coverage because Peleus waited over five months after learning of the New York Case to do so.[6]  Atlantic continues that this untimeliness bars Peleus from now disclaiming coverage.

Under section 3420(d), an insurer must "give written notice as soon as is reasonably possible of . . . disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant."  N.Y. Ins. Law § 3420(d)(2).  Section 3420(d) thus "creates a heightened standard for disclaimer that depends merely on the passage of time."  *KeySpan Gas E. Corp.*, 15 N.E.3d at 1197-98.  Courts measure the timeliness "of an insurer's disclaimer . . . from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage."

---

[6] Both parties seemingly agree that regardless of whether the Contractor Conditions Endorsement counts as a policy exclusion or as a condition precedent, there was not a "lack of inclusion." *Worcester Ins. Co. v. Bettenhauser*, 734 N.E.2d 745, 747 (N.Y. 2000) (explaining that an insurer need not comply with section 3420(d)'s disclaimer requirements "when a claim falls outside the scope of the policy's coverage portion" because "the insurance policy does not contemplate coverage in the first instance").  Because the Court finds that Peleus timely advised Atlantic that the Insurance Policy did not afford coverage, the Court need not decide whether the Contractor Conditions Endorsement qualifies as a policy exclusion or a condition precedent.

*First Fin. Ins. Co. v. Jetco Contracting Corp.*, 801 N.E.2d 835, 838-39 (N.Y. 2003) (quotations omitted).  An insurer's explanation for the delay "is insufficient as a matter of law where the basis for denying coverage was or should have been readily apparent before the onset of the delay." *Id.* (citations omitted).  An insurer, in other words, must embark on a "reasonably prompt, thorough, and diligent investigation of the claim." *Matter of Prudential Prop. & Cas. Ins. Co. (Mathieu)*, 623 N.Y.S.2d 336, 336 (App. Div. 1995).

But when "the grounds for disclaimer are not readily apparent, an insurer must be given reasonable time to adequately investigate a claim in order to determine whether it wishes to disclaim coverage." *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 107 (2d Cir. 2004) (quotations omitted).  In those circumstances, an insurer's "investigation into issues affecting an insurer's decision whether to disclaim coverage obviously may excuse delay in notifying the policyholder of a disclaimer." *First Fin. Ins. Co.*, 801 N.E.2d at 839.

After an insurer discovers grounds to disclaim coverage "or knows that it will disclaim coverage, it must notify the policyholder in writing as soon as is reasonably possible." *Id.* at 837.  That reasonableness inquiry is highly fact-dependent—there is no "fixed yardstick against which to measure the reasonableness" of delay in providing in notice.  *Id.* at 839.  So "most often, . . . whether a notice of disclaimer has been sent 'as soon as is reasonably possible' will be a question of fact, dependent on all of the circumstances of a case that make it reasonable, or unreasonable, for an insurer to investigate coverage." *Id.* at 840.

Still, courts have recognized situations in which an insurer as a matter of law met its burden of justifying a delay in notifying a policyholder of a disclaimer.  This has included circumstances in which the insurer conducted a "prompt, good faith investigation of the claim by the insurer," which "justif[ied] a delay that would normally be deemed unreasonable absent explanation."

*Mount Vernon Fire Ins. Co. v. Harris*, 193 F. Supp. 2d 674, 677 (E.D.N.Y. 2002); *see Neth. Ins. Co. v. United Specialty Ins. Co.*, 276 F. Supp. 3d 94, 107 (S.D.N.Y. 2017) (one-month delay including investigation); *Vesta Fire Ins. Corp. v. Seymour,* No. 96 Civ. 3844 (JG), 1996 WL 1057158, at *6 (E.D.N.Y. Dec.17, 1996) ("just over three months"); *U.S. Underwriters Ins. Co. v. Congregation B'Nai Israel,* 900 F. Supp. 641, 648-49 (E.D.N.Y. 1995) (just "over two months"), *aff'd*, 101 F.3d 685 (2d Cir. 1996); *Matter of Prudential Prop. & Cas. Ins. Co. (Mathieu)*, 623 N.Y.S.2d at 336 (delay of "slightly more than two months").  In such cases, short delays from the operative date—*i.e.*, "when the insurer first learn[ed] of the grounds for disclaimer of liability or denial of coverage"—to when the insurer provided the notice were found to be reasonable as a matter of law.  *First Fin. Ins. Co.*, 801 N.E.2d at 838-39; *see, e.g.*, *Century Sur. Co. v. EM Windsor Constr. Inc.*, No. 16 Civ. 4196 (PAE), 2017 WL 5952706, at *9 (S.D.N.Y. Nov. 29, 2017) ("Although not uniform, the case law applying this standard reflects that, in general, disclaimers made within 30 days of notice are treated as timely, whereas disclaimers beyond the 30-day point are generally treated as untimely."); *U.S. Liab. Ins. Co. v. Winchester Fine Arts Servs., Inc.*, 337 F. Supp. 2d 435, 451 (S.D.N.Y. 2004) (fourteen-day delay after discovering grounds to disclaim), *questioned on other grounds by Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 178 n.7 (2d Cir. 2010); *Matter of Arb. Between Allcity Ins. Co. & Jimenez*, 581 N.E.2d 1342, 1343 (N.Y. 1991) (nine-month total delay, but only twenty-day delay after discovering grounds to disclaim); *Ciampa Ests., LLC v. Tower Ins. Co. of N.Y.*, 922 N.Y.S.2d 379, 380 (App. Div. 2011) (six-day delay after discovering grounds to disclaim).

Besides the timing of the disclaimer, a court considers whether the notice met section 3420(d)'s other requirements.  To do so, the insurer must provide "notice disclaiming coverage" in writing that is "unequivocal, unambiguous, and properly served."  *Phila. Indem. Ins. Co. v.*

*Intrepid Grp., LLC*, No. 16 Civ. 7928 (JGK), 2018 WL 1517199, at \*6 (S.D.N.Y. Mar. 26, 2018) (citations omitted).  A reservation of rights letter alone does not meet this standard for disclaimer: "[a] reservation of rights letter has no relevance to the question whether the insurer has timely sent a notice of disclaimer of liability or denial of coverage." *Hartford Ins. Co. v. Cnty. of Nassau*, 389 N.E.2d 1061, 1062 (N.Y. 1979).  An insurer may, however, rely on a reservation of rights letter "to rebut a claim that the carrier waived the right to disclaim by defending its insured." *N.Y. Cent. Mut. Fire Ins. Co. v. Hildreth*, 835 N.Y.S.2d 409, 413 (App. Div. 2007).

Here, Atlantic has not presented evidence to challenge the proof of Peleus's timely notice to Atlantic of its determination to disclaim coverage.  To begin with, Peleus sent Atlantic an unambiguous reservation of rights letter on September 30, 2019, approximately one week after Peleus learned of the New York Case.  *See* Cornbleet Decl. ¶ 6; Garvey Decl., Exh. 7; Reservations of Rights Letter.  The Reservation of Rights Letter explained that Peleus "reserve[d] its right to disclaim coverage under the . . . applicable policies."  Reservation of Rights Letter at 6.  And it specifically "dr[ew] . . . attention to" the Contractor Conditions Endorsement.  *Id.* at 3; *see also* Deft. 56.1 Stmt. ¶ 18.  The letter further explained that if Atlantic had not fulfilled the requirements for the Endorsement, the Insurance Policy would preclude coverage for the New York Case. Reservation of Rights Letter at 6-7; *see* Deft. 56.1 Stmt. ¶¶ 17-19.

Peleus also sent the Denial of Coverage Letter as soon as reasonably possible.  Peleus underwent a prompt, thorough, and diligent investigation into whether the requirements of the Contractor Conditions Endorsement were satisfied, and Atlantic does not seem to argue otherwise. *See* Opposition at 5-10.  Before Atlantic's defense counsel told Peleus that no contract existed between Atlantic and Taconic, Peleus had "repeatedly asked Atlantic for any contracts between Atlantic and Taconic, or any certificate of insurance issued to Atlantic as an additional insured on

Taconic's insurance policy."   Cornbleet Decl. ¶ 11; *see also* Garvey Decl. ¶¶ 18-20 (not challenging Peleus's claim about the investigation); Opposition at 5-10 (not challenging Peleus's investigation into whether a contract with Taconic existed).   Because of Atlantic's delay in responding to Peleus's inquiries, Peleus did not discover that Atlantic lacked the required contract with Taconic until March 3, 2020, when defense counsel told Peleus that fact.   *See* Deft. 56.1 Stmt. ¶ 28.   Any delay in Peleus disclaiming coverage through March 3, 2020 was therefore attributable to Atlantic, the entity that held the information necessary for Peleus to determine whether the Insurance Policy applied yet did not share that information with Peleus for months in the face of requests from Peleus.   *See Matter of Arb. Between Allcity Ins. Co. & Jimenez*, 581 N.E.2d at 1343 (insurer "had no basis upon which to disclaim" because insurer "had no knowledge" of basis to disclaim until insured disclosed the information).

The section 3420(d) clock thus did not start until March 3, 2020, the date when Peleus first learned that Atlantic did not have the required contract with Taconic.   *See U.S. Liability Ins. Co.*, 337 F. Supp. 2d at 451.   *That very same day*, Peleus sent written notice to Atlantic advising that it was denying coverage "because Atlantic failed to comply with the No Coverage Applies if Contractor Conditions Not Met Endorsement of the Peleus Policy."   Denial of Coverage Letter at 3-4; *see* Deft. 56.1 Stmt. ¶ 29.   The prompt notice of disclaimer means that "[u]nder the facts provided, even viewed in a light most favorable to [Atlantic], [Peleus]'s delay was timely as a matter of law."   *Neth. Ins. Co.*, 276 F. Supp. 3d at 107.

Atlantic resists this finding by arguing that Peleus possessed all the information needed to disclaim coverage as of December 18, 2019.   Opposition at 8.   By that date, Peleus knew that "Atlantic State was the general contractor for the construction project at [71 Murray Street], Winters claimed that he was injured while lawfully working at the location aforementioned, and

Winters was employed by Taconic Builders." *Id.* (quotations and citation omitted).  And also by December 18, Peleus had "tender[ed] the defense to Taconic," which "clearly indicat[ed] [Peleus's] intent to disclaim coverage." *Id.*  So in Atlantic's view, Peleus had triggered the reasonableness clock as of December 18 in two ways: Peleus had the grounds to disclaim coverage and Peleus knew it would disclaim coverage.  *See First Fin. Ins. Co.*, 801 N.E.2d at 837. According to Atlantic, this three-and-one-half-month period from December 18, 2019 and March 3, 2020 constituted unreasonable delay.  Opposition at 6.

But Atlantic's premise that the reasonableness clock began to run on December 18, 2019 is flawed.  As discussed, timeliness for purposes of section 3420(d) is assessed "from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage" or it "knows that it will disclaim coverage." *First Fin. Ins. Co.*, 801 N.E.2d at 837-39 (quotations omitted).  Peleus had learned of no "grounds for disclaimer" as of December 18, 2019.  The Contractor Conditions Endorsement only permitted Peleus to disclaim coverage if Atlantic "fail[ed] to satisfy all conditions precedent."  Deft. 56.1 Stmt. ¶ 10; Contractor Conditions Endorsement at 1.  The only requirement that Atlantic failed to meet was to have a contract with Taconic to defend and indemnify Atlantic and to name Atlantic as an additional insured on its insurance policy.  Atlantic points to no facts suggesting that, on December 18, 2019, Peleus knew that such a contract with Taconic did not exist.  The only evidence presented shows that Peleus first learned of this fact on March 3, 2020, the same day it informed Atlantic that coverage was disclaimed.

Nor did Peleus manifest an intent to disclaim coverage by sending the December 18 letter to Taconic.  That letter simply noted that Peleus wanted to tender the defense to Taconic.  *See* Cornbleet Decl., Exh. F.  It said, for instance, that Peleus was "requesting that Taconic

Development[] defend and [sic] Atlantic State Development Corp. under the previously executed subcontract." *Id.* Tendering the defense to Taconic does not mean that Peleus intended to disclaim coverage. To the contrary, it supports Peleus's contention that it assumed Atlantic had signed an agreement for Taconic to provide Atlantic's defense in compliance with the Contractor Conditions Endorsement of the Insurance Policy. As provided in the Endorsement, the (now known to be non-existent) contract needed to require Taconic "to defend [Atlantic] . . . against all losses arising out of the work performed by or on behalf of [Taconic]." Deft. 56.1 Stmt. ¶ 10; Contractor Conditions Endorsement at 1.

**B. Estoppel**

The Court turns next to Atlantic's estoppel defense. Atlantic argues that the Court should find Peleus estopped from disclaiming coverage because (1) Peleus delayed in sending the Reservation of Rights Letter and (2) allowing Peleus to disclaim coverage would prejudice Atlantic's defense in the New York Case.

"Under New York common law, an insurer, who undertakes the defense of an insured, may be estopped from asserting a defense to coverage, no matter how valid, if the insurer unreasonably delays in disclaiming coverage and the insured suffers prejudice as a result of that delay." *Bluestein & Sander v. Chi. Ins. Co.*, 276 F.3d 119, 122 (2d Cir. 2002). But when "an insurer timely reserves its right to decline coverage and takes no action inconsistent with that denial of coverage, estoppel does not apply." *U.S. Underwriters Ins. Co. v. Allstate Ins. Co.*, No. 10 Civ. 2353 (WFK) (JMA), 2013 WL 3148636, at *8 (E.D.N.Y. June 19, 2013) (citations omitted).

Under this framework, Peleus's timely Reservation of Rights Letter precludes estoppel. "A reservation of rights letter must give fair notice to the insured that the insurer intends to assert defenses to coverage or to pursue a declaratory relief action at a later date." *United Nat'l Ins. Co.*

15

*v. Waterfront N.Y. Realty Corp.*, 948 F. Supp. 263, 268 (S.D.N.Y. 1996).  A letter with such terms "precludes estoppel" when an insurer "ultimately disclaims coverage," even if it "does so on a different ground than it initially-identified to an insured." *Tudor Ins. Co. v. First Advantage Litig. Consulting, LLC*, No. 11 Civ. 3567 (KBF), 2012 WL 3834721, at *11 (S.D.N.Y. Aug. 21, 2012), *aff'd sub nom. First Advantage Litig. Consulting, LLC v. Am. Int'l Specialty Lines Ins. Co.*, 525 F. App'x 60 (2d Cir. 2013); *accord Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006) ("[R]eservations preclude arguments both as to waiver and as to equitable estoppel.").

Here, Peleus sent the Reservation of Rights Letter approximately one week (and certainly less than two weeks) after learning about the New York Case.  *See* Cornbleet Decl. ¶ 6; Garvey Decl., Exh. 7; Reservation of Rights Letter.  "Courts within the Second Circuit have repeatedly upheld as timely reservation of rights letters sent by insurers within weeks of learning of a potential claim." *U.S. Underwriters Ins. Co.*, 2013 WL 3148636, at *9 (collecting cases).  And the Reservation of Rights Letter gave fair and explicit notice to Atlantic that Peleus reserved its right to invoke the Contractor Conditions Endorsement as a ground for denying coverage.  *See* Reservation of Rights Letter at 5 ("In summary, Peleus Insurance Company reserves its right to disclaim coverage under the [Contractor Conditions Endorsement] to any named insured or potential additional insured.").  Thus, because Peleus sent the letter less than two weeks after learning of the claim brought by Winters against Atlantic, the Reservation of Rights Letter "timely reserved all of its rights under the policy" and "precludes estoppel." *U.S. Underwriters Ins. Co.*, 2013 WL 3148636, at *9 (quotations omitted).[7]

---

[7] Atlantic at points suggests that Peleus waived its right to disclaim coverage.  *See* Opposition at 11.  Atlantic's waiver claim is somewhat inconsistent with its argument that the

In any event, there otherwise are no genuine issues of material fact as to the reasonableness of the delay or prejudice to Atlantic.   First, Peleus did not unreasonably delay disclaiming coverage.   Like the above analysis under section 3420(d), "[t]he reasonableness of any delay is 'judged from the time that the insurer is aware of sufficient facts to issue a disclaimer.'" *Bluestein & Sander*, 276 F.3d at 122 (quoting *Mount Vernon Fire Ins. Co. v. Unjar*, 575 N.Y.S.2d 694, 696 (App. Div. 1991)).   As discussed, Peleus lacked sufficient facts to make a determination to disclaim coverage until March 3, 2020, when Atlantic's defense counsel conveyed that Atlantic failed to enter into the required contract with Taconic.   Disclaiming coverage the *same* day that it was "aware of sufficient facts to issue a disclaimer" is reasonable as a matter of law.

Second, Peleus has not prejudiced Atlantic.   "Prejudice is established only where the insurer's control of the defense is such that the character and strategy of the lawsuit can no longer be altered." *Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co.*, 807 N.Y.S.2d 62, 68 (App. Div. 2006).   "This prejudice may be found where, for instance, a belated denial of coverage endangers the insured party's ability to settle a case, implead a party, or where the trial is impending." *Phila. Indem. Ins. Co. v. N.Y. Merchs. Protective Co.*, No. 16 Civ. 1520 (NGG) (RLM), 2017 WL 3634602, at *4 (E.D.N.Y. Aug. 22, 2017) (citations omitted).

---

Court should find the Contractor Conditions Endorsement to be an exclusion to coverage instead of a condition precedent.   "While the insurer may waive the right to disclaim based on the insured's noncompliance with a condition precedent, its right to disclaim coverage based on a policy exclusion can be defeated only by estoppel." *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 772 (N.Y. 1995).   At any rate, Peleus's Reservation of Rights Letter "also preclude[s] a finding of waiver" because Peleus made clear that it did not intend to abandon its invocation of the requirements of the Contractor Conditions Endorsement. *Tudor Ins. Co.*, 2012 WL 3834721, at *11 n.12; *accord Globecon Grp., LLC*, 434 F.3d at 176 ("[R]eservations preclude arguments both as to waiver and as to equitable estoppel.").

Here, the prejudice that Atlantic claims it has experienced (and will experience) is hard to follow.  Atlantic first seems to argue that its appointed counsel had conflicting loyalties between Peleus and Atlantic.  *See* Opposition at 13-15.  Atlantic contends that without those conflicts, it may have "settle[d] the [New York Case] early in the litigation," which would have saved it money and would have been in its best interest.  *Id.* at 13.  But Atlantic has put forward no evidence that Winters ever made a settlement offer, much less one that counsel rejected.  Nor has Atlantic cited any caselaw suggesting that this alleged conflict of interest means that "the character and strategy of the lawsuit can no longer be altered."  *Federated Dep't Stores*, 807 N.Y.S.2d at 68.

Atlantic next contends that Peleus caused prejudice by failing to "advise" Atlantic of its "right to counsel of [its] own choosing."  Opposition at 15-16.  Atlantic contends that it had a right to outside counsel because Peleus's Reservation of Rights Letter created a conflict of interest.  *Id.* And rather than advising Atlantic of that right, Peleus assigned counsel, who "undertook the defense of Atlantic State for more than five months, to the detriment of Atlantic State."  *Id.*

Again, Atlantic cites no caselaw suggesting that Peleus's failure to advise Atlantic of any right to independent counsel precludes Peleus from now disclaiming coverage.[8]  But even if that failure could bar disclaiming coverage, Atlantic did not have a right to outside counsel.  "An insurer's reservation of rights does not automatically entitle its insured to representation of its choice at the insurer's expense."  *Exec. Risk Indem. Inc. v. Icon Title Agency, LLC*, 739 F. Supp.

---

[8] Plus, it is unclear whether New York law even requires an insurer to advise an insured of a right to independent counsel.  *Compare, e.g.*, *Tower Ins. Co. of N.Y. v. Sanita Constr. Co., Inc.*, 11 N.Y.S.3d 122, 123 (App. Div. 2015) ("[T]he right to independent counsel does not establish an affirmative duty on defendant's part to advise its insured of that right."), *with Elacqua v. Physicians' Reciprocal Insurers*, 800 N.Y.S.2d 469, 473 (App. Div. 2005) ("If defendant was obligated to defend plaintiffs in the underlying action, . . . it follows that defendant was required to advise them of that right.").

2d 446, 450 (S.D.N.Y. 2010). "Instead, the insured's right to independent counsel is only triggered when the reservation of rights creates a potential conflict of interest for the counsel provided by the insurer." *Id.* That potential conflict of interest exists when "the defense attorney's duty to the insured would be to defeat liability on *any* ground but his duty to the insurer would be to defeat liability on *only those* grounds for which the insurer might be liable." *Id.* (emphasis in original). "When such a conflict is apparent, the insured must be free to choose his own counsel whose reasonable fee is to be paid by the insurer." *Great Am. Ins. Co. v. Houlihan Lawrence, Inc.*, 449 F. Supp. 3d 354, 373 (S.D.N.Y. 2020) (quoting *Pub. Serv. Mut. Ins. Co. v. Goldfarb*, 425 N.E.2d 810, 815 n.* (N.Y. 1981)). But when "multiple claims present no conflict . . . no threat of divided loyalty is present and there is no need for the retention of separate counsel." *Id.* (quoting *Pub. Serv. Mut. Ins. Co.*, 425 N.E.2d at 815 n.*).

Here, there is no potential conflict of interest. The Reservation of Rights Letter reserved Peleus's right to disclaim coverage if Atlantic did not comply with the Contractor Conditions Endorsement. Reservation of Rights Letter at 5; Deft. 56.1 Stmt. ¶¶ 18-19. Atlantic has no possible defense in the New York Case based whether it met those requirements. And when Peleus appointed counsel, Atlantic already had failed to meet the Contractor Conditions Endorsement's requirements. The appointed counsel therefore could have done nothing to craft a liability defense to avoid coverage under these circumstances. Accordingly, there was no potential conflict of interest for the counsel appointed by Peleus.

## IV.  Conclusion

Accordingly, the Court grants summary judgment for Peleus. The undisputed facts have demonstrated that there is no reasonable possibility of coverage under the Insurance Policy between Atlantic and Peleus. And Atlantic has raised no grounds to bar Peleus from disclaiming

coverage.  Peleus therefore has no duty to defend or indemnify Atlantic in the New York case, and may withdraw its defense in that case.[9]  *See Int'l Bus. Machs. Corp.*, 363 F.3d at 144 ("[A]n insurer may withdraw from an ongoing defense if it becomes clear that the claim is wholly outside the indemnification agreement.").

       The Clerk of the Court is respectfully directed to close this case.

       SO ORDERED.

Dated: February 24, 2022
      New York, New York

                                        JOHN P. CRONAN
                           United States District Judge

---

[9] Peleus also asks the court to declare that it "has no obligation to pay any judgment issued in connection with the [New York Case]."  Motion at 14.  The Court construes Peleus's request as reaffirming that Peleus has no duty to pay any judgment entered against Atlantic in the New York Case, which falls within Peleus having no duty to indemnify Atlantic.